**Amy AUSTIN, et al.,
Plaintiffs-Appellants,**

v.

**BROWN LOCAL SCHOOL DISTRICT,
et al., Defendants-Appellees.**

No. 83–3384.

United States Court of Appeals,
Sixth Circuit.

Argued July 16, 1984.

Decided Oct. 25, 1984.

Cesare Refe, Sheldon Stein (LC), Frank J. Kundrat, Jr. (argued), Cleveland, Ohio, for plaintiffs-appellants.

Dennis M. Whalen (argued), G. Frederick Compton, Jr., Cuyahoga Falls, Ohio, for Brown.

Kimball H. Carey, Means, Bichimer, Burkholder & Baker Co., L.P.A., Columbus, Ohio, for Schmidt.

Thomas P. Albu, Asst. Law Director, Canton, Ohio, for Canton City School, Board of Education.

Gary E. Brown, Asst. Atty. Gen., Columbus, Ohio, for State defendants-appellees.

Before LIVELY, Chief Judge, KEITH, Circuit Judge, and ALLEN, Chief District Judge.[*]

LIVELY, Chief Judge.

This case concerns the relationship among the Education for All Handicapped Children Act of 1975 (EAHCA), 20 U.S.C. § 1401 et seq. (1976), the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1976) and section 1 of the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983 (1976), as they pertain to the education of a handicapped child. The specific question for decision is whether the district court committed reversible error in dismissing claims under § 504 of the Rehabilitation Act and 42 U.S.C. § 1983 upon determining that these claims were based upon an alleged failure to provide a "free appropriate public education" as required by the EAHCA and that the EAHCA provided the sole remedy for such failure. We hold that the district court properly dismissed the § 504 and § 1983 claims and, accordingly, its judgment is affirmed.

## I.

### A.

Most of the facts are not disputed. Amy Austin was thirteen years old when this action was begun. Prior to entering school in 1974 she was diagnosed as being autistic or "autistic-like." She was severely retarded, fearful and inhibited, and was lacking in language development. This early psychological evaluation found that she reacted to high stress by withdrawing. It recommended that she receive an educational program which would "emphasize the development of language, a low stress level, and a positive social interaction."

From January 1975 through June 1976 Amy attended a special education program for "autistic-like" children in Kent, Ohio. Apparently she responded well to the program. However, during this time her parents moved to a farm located in the Brown Local School District more than an hour's drive from Kent. The Brown district paid Amy's transportation to Kent after she moved to the district. Because of the long drive, however, Amy was enrolled in the fall of 1976 in a program for educable mentally retarded children operated by the Brown district at the Malvern School, located nearer her home.

Amy attended the Malvern School program for three years. Her parents became dissatisfied with the program, however, believing that she had regressed severely while there. They met with school district officials and Malvern School personnel in June 1979. It was agreed that the Austins would investigate other possible programs for their daughter. In September 1979 Amy was placed in a program for multi-handicapped children at Lathrop School operated by the Canton City School District. Because the Austins continued to reside in the Brown Local School District, the Brown district remained responsible for Amy's education and for expenses incurred from her attendance at Lathrop.

The Austins again became dissatisfied with the program because they believed Amy's scholastic, communications and behavioral skills deteriorated further. During 1979–80, however, they apparently did not complain directly to the Brown district officials. When Amy returned to the Lathrop School in September 1980 a new teacher was assigned to her class. During

[*] The Honorable Charles M. Allen, Chief Judge, United States District Court for the Western District of Kentucky, sitting by designation.

the fall a series of incidents occurred which her parents contended caused further regression. On November 17, 1980 the Austins filed for an impartial due process hearing regarding the appropriateness of Amy's placement, as provided for by Ohio law, Ohio Rev.Code Ann. § 3323.05(E) Page (1980), and by the EAHCA, 20 U.S.C. § 1415(c) (1976). The Austins continued to be dissatisfied with the Lathrop School program and withdrew Amy from the program in January 1981.

At the due process hearing held in March 1981 the Austins and school officials presented testimony, psychological test results and evaluations and other evidence regarding the appropriateness of Amy's placement in the Lathrop program. The hearing officer found that the Brown Local School District was providing Amy with the requisite free appropriate public education through placement in the Lathrop program.

The Austins appealed the findings to the State Board of Education which referred the matter to a referee for a report and recommendation. The referee recommended a determination that Amy was not being provided with the required education. The State Board reviewed and rejected the referee's finding.

### B.

The plaintiffs instituted this action in December 1981 after the defendant State of Ohio Board of Education determined that Amy was being provided a "free appropriate public education" in accordance with federal and state law. The complaint sought judicial review of the state's finding pursuant to § 615 of the EAHCA, 20 U.S.C. § 1415(e)(2) (1976). It also claimed the right to relief based upon § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1976), and the due process and equal protection clauses of the Fourteenth Amendment, enforceable through 42 U.S.C. § 1983. The Austins prayed for a declaratory judgment, an injunctive order requiring defendants to provide Amy a free appropriate public education, compensatory and punitive damages, costs and attorney fees. There were other claims which are not involved in this appeal.

The Austins named as defendants the Brown and Canton City School Districts, Bruce Schmidt, Brown's superintendent, the State of Ohio Board of Education and Department of Education, and Franklin B. Walter, State Superintendent of Public Education. Although they named "John Doe" defendants, they did not sue Amy's classroom teacher at Lathrop or the Lathrop principal.

After discovery the defendants moved for partial summary judgment dismissing the § 504 and § 1983 claims on the ground that no cause of action for failure to provide a free appropriate public education to Amy could be maintained except under the EAHCA. The district court agreed, and in an unpublished opinion and order granted partial summary judgment for the defendants. The plaintiffs then voluntarily dismissed the EAHCA claim and took this appeal from the final judgment dismissing the complaint without prejudice.

### II.

The main thrust of the plaintiffs' pleadings and proof in the district court was directed to their claim that the defendants failed to provide Amy with "a free appropriate public education" as required by the EAHCA and state law. This claim was voluntarily dismissed by the plaintiffs, however, and is not a part of this appeal.

The plaintiffs argued three issues in their briefs in this court. They contended that money damages are recoverable under § 504 of the Rehabilitation Act of 1973 for failure to provide a free appropriate public education as required by EAHCA, that damages are recoverable under § 1983 for a Fourteenth Amendment equal protection violation for failure to provide the EAHCA-required education and that damages are recoverable under § 1983 for a Fourteenth Amendment due process violation for failure to provide the EAHCA-mandated education or for "mistreatment" involved in providing an "inappropriate" education.

Success on two of these claims is foreclosed by intervening Supreme Court decisions which support the result reached by the district court.

■ In their complaint the plaintiffs sought relief under the Rehabilitation Act of 1973 for the same wrongs allegedly suffered by reason of the defendants' failure to comply with the requirements of the EAHCA. In *Smith v. Robinson*, — U.S. —, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the Supreme Court dealt with a claim for attorney's fees in a case where the plaintiffs combined claims under 42 U.S.C. § 1983 with claims under the EAHCA and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. The Court held that a handicapped child and the child's parents could not rely on both the EAHCA and § 504 of the Rehabilitation Act in an action for alleged failure to provide a free appropriate public education.

> Even assuming that the reach of § 504 [of the Rehabilitation Act] is coextensive with that of the [EAHCA], there is no doubt that the remedies, rights, and procedures Congress set out in the [EAHCA] are the ones it intended to apply to a handicapped child's claim to a free appropriate public education. We are satisfied that Congress did not intend a handicapped child to be able to circumvent the requirements or supplement the remedies of the [EAHCA] by resort to the general antidiscrimination provision of § 504.

*Id.* 104 S.Ct. at 3473. In another case decided the same day as *Smith,* the Supreme Court referred to that decision and stated: "§ 504 is inapplicable when relief is available under the Education of the Handicapped Act [EAHCA] to remedy a denial of educational services." *Irving Independent School District v. Tatro,* — U.S. —, 104 S.Ct. 3371, 3379, 82 L.Ed.2d 664 (1984).

In the course of its opinion in *Smith* the Supreme Court also disposed of another issue raised by the plaintiffs in this action. It held that the plaintiffs could not base a claim under § 1983 that a handicapped child has been denied equal protection of the law on failure of school authorities to provide a free appropriate public education. The Court concluded that Congress intended the EAHCA to be "the exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education." 104 S.Ct. at 3468. Justice Blackmun wrote for the Court:

> We conclude, therefore, that where the [EAHCA] is available to a handicapped child asserting a right to a free appropriate public education, based either on the [EAHCA] or on the Equal Protection Clause of the Fourteenth Amendment, the [EAHCA] is the exclusive avenue through which the child and his parents or guardian can pursue their claim.

*Id.* at 3470.

### III.

■ As we view the record, the only issue not dismissed by the plaintiffs or foreclosed by controlling authority is whether the district court improperly dismissed claims under § 1983 based on alleged violations of due process rights guaranteed by the Fourteenth Amendment. At oral argument plaintiffs' counsel contended that *Smith* does not support a dismissal of the § 1983 due process claim because that claim was not identical to the claim under the EAHCA. The defendants responded that allegations that Amy was mistreated at Lathrop were "interwoven" with the EAHCA claims and were not presented as an independent constitutional claim.

### A.

The Austins argue that Amy was mistreated and excluded from school activities during the fall of 1980 while attending Lathrop School and that this series of incidents constituted violations by the defendants of her due process rights. They contend these violations are actionable under § 1983, independent of their claim that she was not provided a free and appropriate public education in accordance with the EAHCA.

They point on appeal to four specific types of mistreatment: isolation, corporal punishment, withholding Amy's coat and exclusion from a school field trip. Amy's teacher, principal and other school personnel, and her parents testified about these incidents in depositions and at the state due process hearing. Some of the facts, particularly those concerning paddling and withholding Amy's coat, are disputed.

The Austins contend Amy was repeatedly isolated from her classmates by being placed in a "time-out box" located in the school hallway and in her classroom and by being sent to the offices of the school's principal and special education coordinator. Nothing in the record supports finding that Amy was ever placed in the "time-out box" in the hallway but her teacher and her principal testified that Amy was sent either to the principal's office or to a desk isolated from the rest of the class by a partition in order to get her to do her work or to control her behavior when she became unruly.

On one occasion the school principal, Stephanie Patrick, administered corporal punishment to Amy by striking her once with a small ping-pong paddle. Amy's teacher, Janet Norman, had taken Amy to Ms. Patrick's office because she had been insubordinate and used "inappropriate language" three times. Ms. Patrick described Amy as having been "unruly," "making a big fuss and stomping, and just having a tantrum." Amy's teacher later testified she believed she had taken Amy to the principal that day because Amy was not doing her work, and that she never had to punish Amy for anything. Mrs. Austin testified the principal told her that the "inappropriate behavior" for which Amy was paddled was failing to answer when asked why she was slow doing her work.

In September 1980 Amy arrived home one day without the coat she had worn to school. The facts regarding this incident are somewhat obscure but apparently her teacher and other school personnel did not know the coat had been left until Mrs. Austin called about it. Although the principal testified that the coat was then immediately taken to the Austins by the bus driver, Amy's teacher and the special education coordinator, Ms. Novelli, recalled using the incident to get Amy to ask for the coat. The testimony is not clear as to whether Ms. Norman and Ms. Novelli actually refused to give Amy the coat and made her go home without it because she would not ask for it.

The last incident relied upon by the Austins is Amy's exclusion from a school field trip. Ms. Norman denied Amy permission to go on the trip and sent her to the principal's office for a half day because she had not finished her work.

**B.**

The Austins contend that the testimony and exhibits in the record presented triable issues of fact regarding whether the defendants punished and excluded Amy from school privileges in violation of her constitutional right to substantive due process. This claim is not clearly and separately stated in the complaint. However, when they responded to the defendants' summary judgment motion, the plaintiffs did plainly argue, relying on cases concerning corporal punishment, that the "behavior modification techniques" used by the defendants presented a separate triable § 1983 claim. Nevertheless, the plaintiffs appeared to contend primarily that the behavior modification techniques were "inappropriate," and therefore violated the EAHCA. The § 1983 claim was presented as seeking relief from official action taken under color of state law which violated federal statutes, the EAHCA and the Rehabilitation Act, not as one which violated a constitutionally protected liberty interest.

While the Supreme Court has ruled out the use of § 1983 to remedy alleged equal protection violations in this type case, it has left open the possibility of pursuing an independent due process claim. In a footnote Justice Blackmun wrote, "On the other hand, unlike an independent equal protection claim, maintenance of an independent due process challenge to state proce-

dures would not be inconsistent with the [EAHCA's] comprehensive scheme." 104 S.Ct. at 3470–71. However, since we conclude that no due process claim was presented as an independent challenge in this case, we have no occasion to decide here the requirements of such a claim.

## IV.

While the plaintiffs argue forcefully on appeal that they presented an independent due process claim in this lawsuit, this was never made clear in the district court. Several facts render their present position suspect and support the defendants' arguments that the § 1983 claims were "interwoven" with the EAHCA claims to support those claims.

First, there is the fact that the teacher and principal who actually administered the discipline now complained of were never made parties defendant. On the other hand, the two school districts, a district superintendent and the State of Ohio Department of Education and the State Superintendent of Public Education were sued. These agencies and officials are responsible for administration of the EAHCA. Further, the final pretrial order stated that the plaintiffs contended the behavior modification techniques were "inappropriate," a standard used in the EAHCA.

Finally, the plaintiffs filed as exhibits to their memorandum in opposition to the defendants' motion for partial summary judgment affidavits of a specialist in the education of retarded children and a psychiatrist. The education specialist dealt with all four disciplinary actions under the heading, "ISSUES RELEVANT TO AN APPROPRIATE EDUCATION." The entire thrust of the affidavit is to the effect that the administration of the disciplinary measures complained of denied Amy an appropriate education. Similarly, the affidavit of the psychiatrist is concerned with the appropriateness of the program and environment of Lathrop School, not with a claim of infringement of Amy's liberty interests.

The district court did not err in granting partial summary judgment dismissing all non-EAHCA claims. The § 1983 claims, as pled and argued in the district court, did not identify an independent due process violation based on infringement of Amy's liberty interest. Rather, relying on *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the plaintiffs argued that the defendants violated § 1983 by failing to obey the commands of two federal statutes, the EAHCA and the Rehabilitation Act. The district court correctly held that the plaintiffs could not circumvent the procedural requirements of the two comprehensive statutes dealing with handicapped individuals by going directly into federal court under § 1983 to obtain an adjudication that Amy had been denied the benefits of those statutes. This was one of the clear holdings of *Smith v. Robinson*.

The judgment of the district court is affirmed. No costs are allowed on appeal. The parties will bear their own costs.