John CHUHRAN, Plaintiff,

v.

WALLED LAKE CONSOLIDATED SCHOOLS, Farmington Public Schools, Oakland Intermediate School District, and Michigan Department of Education, jointly and severally, Defendants.

Civ. A. No. 92–76860.

United States District Court, E.D. Michigan, S.D.

Nov. 23, 1993.

Stuart Hakola, Michigan Protection & Advocacy Service, Marquette, MI, for plaintiff.

Richard Kroopnick, Hardy, Lewis, Pollard & Page, Birmingham, MI, for defendants Walled Lake Consol. Schools, Farmington Public Schools, and Oakland Intermediate School Dist.

Jane Woodfin, Asst. Atty. Gen., Lansing, MI, for defendant Michigan Dept. of Educ.

### MEMORANDUM AND ORDER [1]

COHN, District Judge.

#### I.

This is an eligibility for special education services case. Plaintiff, John Chuhran (Chuhran) brings this action against defendants, Walled Lake Consolidated Schools (Walled Lake), Farmington Public Schools (Farmington), Oakland Intermediate Schools District (Oakland) (collectively "School Districts"), and Michigan Department of Edu-

---

1. This Memorandum and Order memorialize the Court's ruling from the bench on October 21, 1993 and the reasons for it.

cation (MDOE), alleging: Count I, violation of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, et seq.; Count II, violation of the Michigan Mandatory Special Education Act (MMSEA), M.S.A. § 15.-41701 [M.C.L.A. § 380.1701]; Count III, violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Count IV, violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.; and, Count V, violation of 42 U.S.C. § 1983. Now before the Court is the School Districts' motion for summary judgment, MDOE's motion to dismiss, Chuhran's cross motion for summary judgment and motion for injunctive relief. For the reasons that follow, the School Districts' and MDOE's motions will be granted, and Chuhran's motions will be denied.

## II.

The following facts are undisputed. Chuhran was born October 19, 1969. He has Duchennes muscular dystrophy, a degenerative disease which severely limits his motor functions, thus qualifying him for special education and related services as a student with a "physical or other health impairment" pursuant to the IDEA and the MMSEA. Chuhran is a resident of Walled Lake Consolidated School District but attended a program for physically or otherwise health impaired individuals (POHI) operated by the Farmington Public School District at Farmington Harrison High School.

Chuhran's muscular dystrophy leaves him wheelchair bound with virtually no hand or motor function. He receives deep tracheal suctioning every fifty minutes and is placed on a ventilator for forty-five minutes during the day. He also requires the assistance of a licenses practical nurse (LPN) or paraprofessional.

Prior to Chuhran's matriculation to the ninth grade at Farmington Harrison High School in 1984, an Individualized Educational Planning Committee (IEPC) meeting was held to determine Chuhran's eligibility for the special education program. Once eligibility was determined, an Individualized Education Plan (IEP) was formulated in which the goal of completing a ninth grade curriculum was set for Chuhran. From the 1984–85 school year through the 1990–91 school year, pursuant to annual IEPs, Chuhran received special education and related services through a program operated by the Farmington Public School District.

In April, 1987, prior to Chuhran's completion of the twelfth grade in 1988, an IEPC was convened to develop a post-graduate plan for Chuhran. The IEP enlisted the support of Michigan Rehabilitation Services (MRS), a division of the MDOE which assists school districts in identifying individuals who will require vocational assistance after graduation from high school. Chuhran was also referred to New Horizons of Oakland County, Inc. (New Horizons), a private non-profit rehabilitation corporation, for a vocational evaluation. New Horizons reported on Chuhran's interest in computers and expressed concern about a specific training program which would have required Chuhran to travel long distances to the facility. New Horizons recommended that Chuhran receive additional public school programming which would include computer training, use of adaptive equipment and additional math and business related classes.

On May 24, 1988, an IEPC determined that Chuhran continued to be capable of handling a regular course of study and alternative placements for the 1988–89 school year were rejected. Although Chuhran participated in commencement exercises with his class in June, 1988 he continued to attend classes at Harrison in 1988.

On May 18, 1989, an IEPC discussed two placement options for Chuhran: (1) continuing in the Farmington Harrison POHI, or (2) termination of services by means of graduation. Chuhran opposed graduation and the IEPC allowed Chuhran to remain at Harrison for the 1989–90 and 1990–91 school years.

On May 28, 1991, an IEPC determined that Chuhran should be graduated and recommended termination of his special education program and related services effective June 6, 1991. Chuhran disagreed with this conclusion and requested a due process hearing as provided by IDEA and MMSEA to challenge the recommendation. He also re-

quested an administrative hearing under § 504 of the Rehabilitation Act of 1973.

An administrative hearing was held before a Local Hearing Officer (LHO) on April 14, 15 and 16 of 1992. The LHO's decision, issued on July 10, 1992, concluded that the IEPC's recommendation that Chuhran be graduated was appropriate under the state and federal special education laws and that there had been no violation of § 504.

Chuhran requested a state level review of the local hearing officer's decision. A state level hearing officer (SLRO) upheld the decision of the LHO. This case, which is a form of appeal followed.

### III.

### A.

### 1.

■ Count I alleges that Chuhran has not been provided with a free appropriate education through the secondary school level under IDEA. In an appeal under the IDEA, a district court is to "receive the records of the administrative proceedings, hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, grant such relief as the Court determines is appropriate." 20 U.S.C. § 1415(e)(2). In other words, the Court reviews *de novo* giving due weight to the administrative findings. *Board of Education of the Hendrick–Hudson Central School District v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

The IDEA provides, in relevant part:

20 U.S.C. § 1400(b) Congressional statements and declarations

 &ast; &ast; &ast; &ast; &ast; &ast;

(9) it is the national interest that the Federal Government assist State and local efforts to provide programs to meet the educational needs of children with disabilities in order to assure equal protection of the law.

20 U.S.C. § 1400(c) Purpose

It is the purpose of this chapter to assure that all children with disabilities have available to them, within the time periods specified in section 1412(2)(B) of this title, *a free appropriate public education* which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of children with disabilities and their parents or guardians are protected, to assist States and localities to provide for the education of all children with disabilities, and to assess and assure the effectiveness of efforts to educate children with disabilities. (Emphasis added)

20 U.S.C. § 1401(a)

 &ast; &ast; &ast; &ast; &ast; &ast;

(16) "Special education" means specially designed instruction, at no cost to parents or guardians, to meet the unique needs of the child with a disability, including—

(A) instruction conducted in the classroom, in the home, in hospitals and institutions, and other settings; and

(B) instruction in physical education.

(17) "Related services" means transportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services including rehabilitation counseling, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

(18) "Free, appropriate public education" means special education and related services that

(A) have been provided at public expense, under public supervision and direction, and without charge,

(B) meet the standards of the State educational agency

(C) include an appropriate preschool, elementary, or secondary school education in the State involved, and

(D) are provided in conformity with the individualized education program required under § 1414(a)(5) of this title.

(19) "Transition services" means a coordinated set of activities for a student, designed within an outcome-oriented process, which promotes movement from school to post-school activities, including post-secondary education, vocational training, integrated employment (including supported employment) continuing adult education, adult services, independent living, or community participation. The coordinated set of activities shall be based upon the individual student's needs, taking into account the student's preferences and interests, and shall include instruction, community experiences, the development of employment an other post-school adult living objectives, and when appropriate, acquisition of daily living skills and functional vocational evaluation.

(20) "Individualized education program" means a written statement or each child with a disability developed in any meeting by a representative of the local educational agency or an intermediate educational unit who shall be qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities, the teacher, the parents or guardian of each child, and whenever appropriate, such child, which statement shall include—

(A) a statement of the present levels of educational performance of such child,

(B) a statement of annual goals, including short-term instructional objectives,

(C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs,

(D) a statement of the needed transitional services for students beginning no later than age 16. an annually thereafter (and when determined appropriate for the individual, beginning at age 14 or younger), including, when appropriate, a statement of the interagency responsibilities or linkages (or both) before the student leaves the school setting.

(E) the projected date for initiation an anticipated duration of such services, and

(F) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.

In the case where a participating agency, other than the educational agency, fails to provide agreed upon services, the educational agency shall reconvene the IEP team to identify alternative strategies to meet the transition objectives.

20 U.S.C. § 1412 Eligibility requirements

\* \* \* \* \* \*

(6) The State educational agency shall be responsible for assuring that the requirements of this subchapter are carried out and that all educational programs for children with disabilities within the State, including all such programs administered by any other State or local agency, will be under the general supervision of the persons responsible for educational programs for children with disabilities in the State educational agency and shall meet education standards of the State educational agency. This paragraph shall no be construed to limit responsibility of agencies other than educational agencies in a State from providing or paying for some or all of the costs of a free appropriate public education to be provided children with disabilities in the State.

2.

IDEA assists children with disabilities through the creation of IEPs, "individualized education programs," which are "tailored to the unique needs of the handicapped child." *Board of Education v. Rowley*, 458 U.S. 176, 181, 102 S.Ct. 3034, 3038, 73 L.Ed.2d 690 (1982); *See also David D. v. Dartmouth School Committee*, 775 F.2d 411 (1st Cir. 1985), *cert. denied* 475 U.S. 1140, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986). The IEP re-

quires a written statement for each child with a disability, developed in a meeting of parents, teachers, administrators and, whenever appropriate, such child. The statement must specify the present levels of educational performance of the child, specific educational services to be provided, a statement of the needed transition services and criteria for progress evaluation. 20 U.S.C. § 1401(20). The Act further requires at least an annual review of each child's IEP and authorizes revisions wherever appropriate. § 1413(a)(5); *See also* § 1413(a)(11).

If the parent or child believes that the IEP implemented by the school "provides a lesser education than they regard to be their legal right, or if they feel their procedural rights have been infringed, they have an opportunity for an initial impartial due process hearing conducted at the local or regional level. The party may then appeal to the state educational agency if dissatisfied by the findings of the local agency. § 1415(b)(2) If the party is aggrieved by the findings and decision of the state administrative hearing, the Act gives him the right to bring a civil action in federal or state court. § 1415(e)(2).

### B.

The School Districts move for summary judgment as to the IDEA claims and assert that Chuhran has been provided with a "free, appropriate public education" (FAPE) as defined by the Act and that he is not entitled to additional educational services at the secondary school level. In *Board of Education v. Rowley,* 458 U.S. 176, 181, 102 S.Ct. 3034, 3038, 73 L.Ed.2d 690 (1982), the United States Supreme Court set out a two-part test for determining whether there has been compliance with IDEA:

1) Has the State complied with the procedures set forth in the Act?

2) Is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?

The Court will address the prongs of the *Rowley* test seriatim.

### IV.

#### A.

##### 1.

■ Chuhran asserts several procedural violations of the IDEA. First, Chuhran alleges that defendants failed to provide adequate notice of termination of services. Chuhran relies upon a letter sent to him by Walled Lake indicating that an IEPC would be convened to consider a change of status, but did not indicate that the proposed change was graduation.

■ However, as established by *Doe v. Defendant I,* 898 F.2d 1186 (6th Cir.1990), technical defects are not sufficient to render the IEP inappropriate if the parents and district are aware of the relevant information. Graduation had been proposed and rejected as early as 1989. There could not have been any reasonable basis for surprise that the issue of graduation was raised by the IEPC in May 1991.

##### 2.

###### a.

■ Second, Chuhran contends that defendant's failure to develop a written plan for transition services constituted a procedural violation of the IDEA. Chuhran relies on *Puffer v. Raynolds,* 761 F.Supp. 838, 850 (D.Mass.1988), where the district court rejected the hearing officer's finding that the school committee's failure to create an IEP for a student in need of special education was not "outcome determinative". The court further decided that the hearing officer's decision was "not entitled to great deference." *Id.*

###### b.

*Puffer* is inapposite. The plaintiff student in *Puffer* was graduated from the high school without ever being provided with any special education services once she was assessed as a child with a disability. In *Puffer,* the student's graduation was immediate upon the suggestion of the school board. She did not attend any annual IEPCs that would have indicated that graduation was imminent.

Chuhran was provided with an IEP from the outset of his matriculation to Harrison High School. IEPCs were also conducted yearly to assess his progress and formulate goals for the academic year to follow. Furthermore, Chuhran, unlike the student in *Puffer,* had the graduation option presented to him in an IEPC as early as 1989, at which time it was rejected. Chuhran remained at the high school for the 1989–90 and 1990–91 school years. It was not until 1991, however, that the IEPC recommended graduation as the only alternative for Chuhran.

3.

■ Chuhran also asserts that, because the *Puffer* court fashioned a remedy that provided special education services to the student when she entered college, the Court is obliged to fashion such a remedy for Chuhran.

There is no basis for imposing such an extraordinary remedy. Chuhran has not shown how *Puffer* compels an interpretation of IDEA that requires a secondary school system to provide transportation, nursing, occupational and physical therapy to a student who has been admitted to a college where that student has had four additional years of special education services after graduation was first presented.[2] Chuhran's conclusory allegations of inadequate services does not impose additional duties upon a secondary school system, nor does it empower this Court to fashion such elaborate remedies outside the scope of the statute.

B.

1.

■ Chuhran contends that defendants failed to implement the transition service requirements of the IDEA. He says he was never provided with a coordinated plan of transition or vocational services from October 30, 1990 through October 19, 1991. In support of this contention, Chuhran offers a report by Dr. Elise Kampshroer, Director of Student Services for the Cudahy County School District in Cudahy, Wisconsin. Dr.

Kampshroer reviewed certain records provided by Chuhran and concluded:

It appears that the District was negligent in meeting the letter of the law by not including personnel from a receiving agency (post secondary or supported employment or other employment service) to at least the 1990–1991 (after October) and the 1991–1992 IEP. In addition no documentation of cooperation with outside agencies for transition purposes was documented in any of the IEP's. One outside vocational evaluation was completed (New Horizons) and one district vocational evaluation was completed documenting the difficulties Mr. Chuhran may have in transitioning to post school employment, yet there was no reflection of trying to offset some of the perceived difficulties from job shadowing, school based employment, community instruction, a functional assessment, technology, additional course work at a tech school, etc. In other words, the IEP committee actually decreased the amount of goals and objectives relating to vocational and transitional services to the point of no objectives whatsoever in the 1991–1992 IEP. Therefore it is this Director's opinion that the district did not meet the law requiring school districts to initiate, coordinate, and govern the transition to post secondary school and/or employment after high school.

Dr. Kampshroer's report is of little weight. The two hearing officers' opinions refute Dr. Kampshroer's opinion. Her report is based on a document review of limited number which did not include the transcripts of the administrative proceedings. The transcripts provide the most comprehensive description of the transition services provided by the School Districts. Moreover, Dr. Kampshroer relied on Bulletin No. 93.1 issued by the Wisconsin Department of Public Instruction, which was published in 1993 interpreting federal regulations promulgated on September 29, 1992. The regulations had not been set forth at the time Chuhran was receiving transition services. The School Districts

---

**2.** Chuhran continued to attend Farmington Harrison High School through the 1992–1993 school year.

cannot be faulted or penalized for failing to comply with something that was not in existence.

### 2.

Procedural noncompliance with the IDEA will be deemed violative if it results in substantial deprivation. *Cordrey v. Euckert,* 917 F.2d 1460 (1990), cert. denied, 499 U.S. 938, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991); *Thomas v. Cincinnati Board of Education,* 918 F.2d 618 (1990). The LHO concluded that "although [the School District] failed to develop a specific plan entitled transition services ... it did conduct transition planning within the purview of the IDEA definition."

In *Doe,* the Court of Appeals for the Sixth Circuit held that "defects in an IEP were not sufficient to render the IEP inappropriate because both the district and the parents were aware of the relevant information. To invalidate an IEP for these procedural flaws would be 'to exalt form over substance,' in disregard of the intent of EHA (currently known as the "IDEA")." 16 EHLR at 930. The Sixth Circuit acknowledged that appellant's IEP contained

> no references to his present education performance as required by § 1401(19) (as amended 1401(20)). Nor [did] it include any objective criteria and evaluation procedures and schedules for determining ... whether instructional objectives [were] being achieved in violation of 1401(19)(E) (as amended 1401(20(E)).

*Id.* at 932. The Court considered these procedural flaws to be technical noncompliance which resulted in no substantial deprivation to appellant since the appellant's parents and school officials "had all the information required by 1401(19) (as amended 1401(20)), even though it was not contained in the four corners of the IEP." *Id.* The Sixth Circuit acknowledges the importance of compliance with the procedural safeguards as set forth by the IDEA. However, the *Doe* Court indicated that "the (Supreme) Court's emphasis on the procedural safeguards ... refer(s) to the process by which the IEP is produced, rather than a myriad of technical items that must be included in the written document." *Id.* The *Doe* Court further stated that "adequate parental involvement and participation

in formulating an IEP, not adherence to the laundry list of items given in § 1401(19), appear to be the Court's primary concern in requiring that procedures be strictly followed." *Id.*

### 3.

Chuhran has been provided with adequate transition services in spite of the District's failure to document them. In 1987, Chuhran was evaluated to determine future career opportunities in computers.

> The District also coordinated with the Handicappers Small Business Association and various community employers to scout out employment opportunities for plaintiff. He took 1–3 classes per year directly related to the computer/business field recommended by New Horizons (a private nonprofit rehabilitation service). His POHI teacher talked to him frequently about his future ... and going to college. The District recontacted Michigan Rehabilitation Services (MRS) to reopen plaintiff's case so that he would receive counseling and other vocational assistance in the event of graduation.

LHO's Decision, 7/10/93.

Thus, although these services were not committed to writing, they were certainly adequate. Furthermore, the District had begun transitioning Chuhran in as early as 1987 even though these services were not required under the IDEA until 1990. Accordingly, the first prong of the *Rowley* test has been satisfied.

### V.

### A.

The second inquiry is whether the individualized educational program developed through the Act's procedures are reasonably calculated to enable the child to receive educational benefits. This prong of the *Rowley* test addresses whether the state substantively complied with the IDEA. *Rowley,* 458 U.S. at 206, 102 S.Ct. at 3051. Specifically, the question before the Court is whether Chuhran was properly graduated under the Act. The burden of proof is on Chuhran to

show by a preponderance of the evidence that the IEP was inadequate. *Id.*

### B.

In *Rowley,* the Supreme Court held that a "free, appropriate, public education" is provided if the student with a disability receives:

[P]ersonalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. Such instruction and services must be provided at public expense, must meet the State's educational standards, must approximate the grade levels used in the State's regular education, and must comport with the child's IEP. In addition, the IEP, and therefore the personalized instruction, should be formulated in accordance with the requirements of the Act and, if the child is being educated in the regular classrooms of the public education system, should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade.

*Id.* 458 U.S. at 203–04, 102 S.Ct. at 3049. The Supreme Court concluded that Rowley received an "adequate" education based upon the fact that "she perform(ed) better than average in her class and was easily advancing from grade to grade." *Id.* 458 U.S. at 210, 102 S.Ct. at 3053.

### C.

■ Chuhran followed a regular education curriculum leading to a high school diploma. In order to graduate a student with a disability, the student must complete his IEP requirements and otherwise meet requirements for general graduation. *Gorski v. Lynchburg School Board,* 875 F.2d 315 (4th Cir.1989). Chuhran has completed his general graduation requirements. His IEP goals have been to pass mainstream classes, maintain maximum physical functioning in the educational setting, receive vocational evaluation, training, and exposure to new equipment and programs. LHO's decision, 7/10/92. Chuhran has not only passed but has shown exceptional performance in his mainstream classes. In addition to his core curriculum, an IEPC revealed Chuhran's interest in computers and he was provided one-

on-one training in the Lotus computer software program. He has also received career and college counseling.

The Court is persuaded, applying the *Rowley* standard to the undisputed facts of this case, that Chuhran received an adequate FAPE and is no longer eligible for special education services under the IDEA. Accordingly, the motion as to Count I will be granted.

### VI.

### A.

■ Count II alleges violations of the MMSEA, which mirror the allegations contained in Count I. The MMSEA differs from the IDEA in that it requires the state to create special education programs and services designed to develop the "maximum potential" of every handicapped person and extends benefits to the age of 26. "Maximum potential" is not statutorily defined. In *Nelson v. Southfield Public Schools,* 148 Mich. App. 389, 393, 384 N.W.2d 423 (1986), the Michigan Court of Appeals interpreted "maximum potential" as being limited by a balancing of the needs of the student with the costs borne by the school if they were to implement such a program.

### B.

Chuhran claims suggest that the "maximum potential" objective of the MMSEA requires that the School Districts continue to provide special education services while he attends Oakland Community College. However, Chuhran does not advance a cogent argument based on case law or legislative history to support the imposition of this extraordinary obligation on the School Districts. Accordingly, the motion as to Count II will be granted.

### VII.

### A.

■ Count III alleges violation of § 504 of the Rehabilitation Act of 1973, which states in relevant part:

No otherwise qualified handicapped individual· in the United States, as defined in § 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794.

In *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the United States Supreme Court held that where the IDEA provides a remedy, it is the exclusive avenue for redress. In *Irving Independent School District v. Tatro,* 468 U.S. 883, 895, 104 S.Ct. 3371, 3378, 82 L.Ed.2d 664 (1984), decided on the same day as *Smith,* the Supreme Court stated, "§ 504 is inapplicable when relief is unavailable under the Education of the Handicapped Act (currently known as the "IDEA") to remedy a denial of educational services."

The Court of Appeals for the Sixth Circuit addressed this issue in *Austin v. Brown Local School District,* 746 F.2d 1161 (6th Cir. 1984). The Sixth Circuit concluded that plaintiffs could not seek relief under the Rehabilitation Act of 1973 for the same wrong allegedly suffered by reason of defendant's failure to comply with requirements of the Education for All Handicapped Children Act, which provided the sole remedy for failure to provide appropriate public education. *Id.* at 1164.

### B.

Chuhran's claims only challenge the adequacy of special educational services. His claims are squarely within the ambit of IDEA, which provides the sole remedy. The Rehabilitation Act claim is redundant of the IDEA claim. Accordingly, the motion will be granted as to Count III.

### VIII.

#### A.

■ Count IV is brought under the Americans with Disability Act which states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

Chuhran argues that because he did not receive transition services, he did not receive a FAPE· and therefore,· he was not properly graduated. Chuhran contends that he is being denied services without proper graduation, therefore, he is being discriminated against under the ADA.

#### B.

Chuhran's claims only challenge the adequacy of special educational services. His claims are squarely within the ambit of IDEA, which, as discussed above, provides the sole remedy. The ADA claim is redundant of the IDEA claim. Accordingly, the motion will be granted as to Count IV.

### IX.

#### A.

■ Count V alleges violation of 42 U.S.C. § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction ·thereof .to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The Supreme Court has indicated that "§ 1983 is not· itself a source of substantive rights, but a method a vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2695 n. 3, 61 L.Ed.2d 433 (1979). Chuhran's claim under § 1983 is entirely duplicative of his prior claims. All of his claims are statu-

476

tory and each of those statutes provides a cause of action. Furthermore, Chuhran has not alleged specific deprivation of his rights under § 1983 apart from those rights he alleged in the statutes. Chuhran makes no claims that the Constitution or treaties of the United States have been violated, therefore, he has no cause of action under § 1983. For the above reasons, defendant's motion with respect to Count V will be granted.

## X.

### A.

 MDOE moves to dismiss the claims contained in Counts II (MMSEA) and V (§ 1983) on the grounds that the Court is without subject matter jurisdiction and Counts I (IDEA), III (Rehabilitation Act) and IV (ADA) on the grounds that Chuhran has failed to state a claim for which relief can be granted. Fed.R.Civ.P. 12(b)(1), (6).

### B.

#### 1.

MDOE asserts that the Eleventh Amendment bars an action under the MMSEA in federal district court against a state agency. MDOE relies on *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984) (Pennhurst II), where the United States Supreme Court stated:

A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment. We concluded above that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.... We now hold that this principle applies as well to state-law claim brought into federal court under pendent jurisdiction.

#### 2.

Chuhran asserts that *Pennhurst II* is not instructive and argues that the Eleventh Amendment does not pose a jurisdictional bar where the state law has been incorporated into federal law. Chuhran relies on *David D. v. Dartmouth School Committee,*

775 F.2d 411 (1st Cir.1985), where the Court of Appeals for the First Circuit concluded that the Eleventh Amendment did not bar an action in federal court against the Department of Education of the Commonwealth of Massachusetts to enforce the state law standards incorporated into the Education for All Handicapped Children Act.

#### 3.

The claim under the IDEA contained in Count I presents a *David D*-type circumstance: seeking federal court enforcement of state law standards incorporated into a federal law. However, Chuhran's reliance on *David D* is misplaced with respect to the MMSEA claim contained in Count II. Chuhran's claim against MDOE under the MMSEA seeks a federal court remedy requiring the state to conform its conduct to state law. The Court's jurisdiction over the MMSEA claim does not rest on a federal question, but would rest, if at all, in supplemental (pendent) jurisdiction. Thus, *Pennhurst II* controls and MDOE is protected by the Eleventh Amendment from an exercise of the Court's supplemental jurisdiction over the MMSEA claim. The Court is without subject matter jurisdiction over the claims contained in Count II as against MDOE. Accordingly, MDOE's motion to dismiss will be granted as to Count II.

### C.

Chuhran's claims against the MDOE as contained in Counts I (IDEA), III (Rehabilitation Act) and IV (ADA) bottom squarely on the assertion that MDOE breached a statutory duty to assure that the School Districts complied with statutory requirements. As asserted by Chuhran, MDOE liability arises from its failure to provide adequate oversight to prevent or remedy a breach of a statutory duty by the School Districts. As discussed above, the undisputed facts establish that the School Districts have complied with the applicable statute and are entitled to summary judgment on each claim. The predicate condition to MDOE liability having not been satisfied, MDOE is also entitled to judgment in its favor. Accordingly, MDOE's motion to

dismiss will be granted as to Counts I, III, and IV.

### D.

#### 1.

MDOE also asserts that the Court is without subject matter jurisdiction over the § 1983 claim against MDOE contained in Count V. In *Will v. Michigan Department of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989), the United States Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court noted that an action for injunctive relief could be maintained against state officials sued in their official capacity under § 1983 pursuant to the principles established in *Ex Parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908). *See Will,* 491 U.S. at 71 n. 10, 109 S.Ct. at 2311 n. 10.

#### 2.

██ Chuhran does not dispute that MDOE is not a suable "person" under § 1983. However, Chuhran seeks leave to amend the complaint to plead claims for injunctive relief against MDOE officials under the principles of *Ex Parte Young.*

#### 3.

The Court is without subject matter jurisdiction over the claims pleaded against MDOE in Count V. As discussed above, § 1983 does not provide a source of substantive rights and Chuhran's claims under § 1983 are duplicative of his prior statutory claims. Leave to amend to plead these claims against state officials would be fruitless. Accordingly, MDOE's motion to dismiss will be granted as to Count V.

### XI.

For the reasons stated, Chuhran's motion is DENIED,[3] the School Districts' motion for summary judgment is GRANTED, MDOE's

**3.** Chuhran also requested an injunction ordering the School District to continue to provide Chuhran with physical therapy and transportation to the School for physical therapy. On October 21,

motion to dismiss is GRANTED and the case is DISMISSED.

SO ORDERED.

1993, following oral argument, the Court denied the motion from the bench in light of its ruling in favor of defendants.