F I L E D
United States Court of Appeals
Tenth Circuit

SEP 10 2001

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

T.S.,

        Plaintiff-Appellant,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 54, STROUD, OKLAHOMA,

        Defendant-Appellee.

No. 00-6165

---

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CIV-99-1616-W)**

---

Gary E. Thompson (Allen B. Mitchell, on the briefs), Sapulpa, Oklahoma, for
Plaintiff-Appellant.

Jerry A. Richardson (Andrea R. Kunkel and Randall D. Huggins, on the brief),
Rosenstein, Fist & Ringold, Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **EBEL**, **MCKAY**, and **CUDAHY**,[*] Circuit Judges.

---

**CUDAHY**, Circuit Judge.

---

    [*] The Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh
Circuit, sitting by designation.

T.S. was a high school student who was entitled to certain services pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq*. His education program was part of an Individualized Educational Plan (IEP) under which Independent School District Number 54 provided T.S. with a free and appropriate public education (FAPE). *See* 20 U.S.C. § 1414(d). T.S. appeals the denial of a due process hearing on the failure of the school district to provide the procedural safeguards required by the IDEA. We find that neither we nor the district court have jurisdiction over this appeal, and we therefore vacate the judgment of the district court.

The IDEA guarantees that children with disabilities have access to "a free and appropriate public education which emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(c). To meet this goal, the IDEA provides federal funding to state and local agencies and requires them to provide each child with an IEP. An IEP is a written statement that includes such matters as the child's level of educational performance, annual goals, services to be provided to the child and the like. *See* 20 U.S.C. § 1414(d). A school district satisfies its obligation to provide a FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Board of Educ. v. Rowley*, 458 U.S. 176, 203 (1982). Parents have the right to seek review of any decisions affecting

their child's education through a due process hearing conducted by the state educational agency. *See* 20 U.S.C. § 1415(f)(1); *Honig v. Doe*, 484 U.S. 305, 311-12 (1988).

At the beginning of his senior year at Stroud High School, T.S. requested a due process hearing from the Oklahoma State Department of Education on the grounds that the school district had denied him a FAPE. The matter was assigned to a hearing officer, Mark L. Reed. At the hearing, T.S. alleged that the school district had denied him a FAPE because his IEP did not identify a weakness in his typing skills and did not address his preferred modifications for his English and horticulture classes. Reed found in favor of the school district, and T.S. appealed. In April 1999, the appeal officer affirmed Reed's decision. He held that T.S.'s IEP was appropriate, needed no modification and exceeded the school district's obligations under the IDEA. Although he had a right to do so, *see* 20 U.S.C. § 1415(i)(2)(A), T.S. did not appeal this decision to the federal district court.

That same month, a team meeting regarding T.S.'s IEP was held. This was apparently the second team meeting of that year, but it was not an "exit IEP meeting" and, T.S. argues, it did not focus on the issue of transition services for his post-graduation life.

The school in regular course concluded that T.S. had successfully

completed all of his academic requirements to allow him to graduate. Yet on May 19, 1999, the last day of school, T.S. delivered a request for a due process hearing to the school district. He also sent the school district a letter, dated May 18, claiming that his IEP was insufficient and that, therefore, the April team meeting had been improperly conducted. The school district concluded that T.S. had graduated before the request for a due process hearing was received and thus he was due no further relief under the IDEA. The hearing officer agreed with this position, and concluded that he lacked jurisdiction to hold a due process hearing on the issue. T.S. again appealed, and the appeals officer affirmed that decision. T.S. then asked the district court to order a due process hearing, and that request was denied. The court concluded that the administrative decisions to deny T.S.'s requests for a due process hearing were proper. T.S. now appeals.

Our first task is to determine whether we have jurisdiction over this case. If a student has graduated from high school and does not contest his graduation, the case is moot. *See Board of Educ. v. Nathan R.*, 199 F.3d 377, 381 (7th Cir. 2000). Once a student has graduated, he is no longer entitled to a FAPE; thus any claim that a FAPE was deficient becomes moot upon a valid graduation. *See id.*; *see also Neshaminy Sch. Dist. v. Karla B.*, 25 I.D.E.L.R. 725, 727 (E.D. Pa. 1997). This rule applies, of course, only where a student does not contest his graduation, and where he is seeking only prospective—rather than

4

compensatory—relief.

We therefore only consider T.S.'s claims in light of the remote possibility that they could be construed as a challenge to T.S.'s graduation from Stroud High School, and the chance that they seek compensatory educational services. The difficulty here is the murkiness of T.S.'s claims. While we doubt that he seriously challenges his graduation, and we also question that he seriously seeks some sort of compensatory relief, there is an inkling of those possibilities lurking in T.S.'s various arguments. However, it is just an inkling—and that is hardly enough to overcome the apparent mootness of his claim. For T.S. was apparently prepared for, actually sought and was properly deemed eligible for graduation from high school at the end of his senior year. This conclusion is bolstered by the school district's noting that T.S. was attending college after his high school graduation and that he achieved a 3.6 grade point average during his first college semester—facts T.S. does not contest.

T.S.'s only clear request here is for a due process hearing, and, at least in connection with a suggestion of an improper graduation, we have jurisdiction to consider such a purely procedural claim—but only if it is connected with substantive relief. For a claim based on deprivation of a due process hearing and/or other procedures, to be cognizable, must be linked with a consequent loss of substantive benefits. Here, these deprivations must involve loss of

qualification for graduation. This loss would import defects in the educational program such that T.S. had yet to meet certain requirements for graduation from the district. Thus, T.S. would have to argue that his graduation was invalid. It is difficult to find any such contentions in T.S.'s submissions on this appeal.

Nevertheless, we shall examine T.S.'s arguments to determine whether they arguably call for the invalidation of his graduation and for compensatory relief. We review the decision of the district court *de novo*, applying the same standard of review to the hearing officer's determination as did the district court. *Murray v. Montrose Cy. Sch. Dist.*, 51 F.3d 921, 927 (10th Cir. 1995). Thus, we actually apply a modified *de novo* review, which entails an independent review of the evidence, and "a decision based on the preponderance of the evidence, while giving 'due weight' to the administrative proceedings below." *Id.* (quoting *Doe v. Board of Educ.*, 9 F.3d 455, 458 (6th Cir. 1993), *cert. denied*, 511 U.S. 1108 (1994)).

The crux of T.S.'s argument is that graduation constitutes a "change in placement" under the IDEA, and that therefore the school district was required to give him formal notification of the impending graduation, an exit IEP meeting and notice of his available options related to the proposed change in placement. *See* 34 C.F.R. 300.122(a)(3)(iii). T.S. also argues that local educational agencies must, before determining that a child is no longer a child with a disability eligible

6

for services, evaluate or reevaluate the child.     *See* 20 U.S.C. § 1414(c)(5).  Gone

from his claims are the allegations in his initial due process hearing requests, and

his main chance of contending that he contests the propriety of his graduation.     [1]

First, T.S. argues that notice of his impending graduation should have been

given.  *See* 34 C.F.R. 300.122(a)(3)(iii) ("Graduation from high school with a

regular diploma constitutes a change in placement, requiring written prior notice .

. . .").  However, T.S. does not claim that this lack of notice rendered his

graduation invalid.  By failing to directly challenge the validity of his graduation,

T.S. essentially concedes both that the claimed procedural defect was harmless

and that the appeals officer had no jurisdiction to hear his claim.     *See Nathan R.*,

199 F.3d at 381 (finding that a student's IDEA claim became moot once he

---

[1]T.S. originally claimed, inter alia, that all areas of his disability were not
addressed by the IEP goals and objectives; testing indicated his weakness in "word
attack," and the school has failed to include this in his IEP; and all areas of T.S.'s
suspected disability were not tested.  And in his June 28 letter, he most clearly questioned
the propriety of his graduation:
> The school cannot neglect its obligations and stultify the requests of the student
> until 'graduation' happens and the school issues a 'regular diploma.'  Again, in
> this case the school claims the student has graduated.  But that is on paper only, a
> paper issued by the school.  The procedural requirements, notice, and due process
> rights have not been afforded.  The student has not properly and lawfully
> graduated."

None of these allegations appear in T.S.'s argument on appeal, and even if they did, we
are uncertain whether even these are sufficient to produce a substantive claim or a sincere
challenge to his graduation.

graduated and was no longer entitled to services). [2]

T.S. also contends that there was a requirement for an "exit meeting," of which he was deprived. If there were such a requirement, that requirement was not met and T.S.'s graduation, as a result, might not have been authorized; arguably he might thereby allege a substantive deprivation. But, as will appear, T.S.'s argument does not really add up to such a claim. For T.S. argues that, at the allegedly required exit meeting, the student's education program must be reviewed to ensure that graduation is appropriate. *See* Policies and Procedures for Special Education in Oklahoma 80 (1993). But there is no such requirement under the IDEA. He cites 20 U.S.C. § 1414(c)(5), which states that "[a] local educational agency shall evaluate a child with a disability in accordance with this section before determining that the child is no longer a child with a disability." But the regulation implementing that section specifically states that the prescribed evaluation is not required before a termination of benefits due to graduation with a regular high school diploma. 34 C.F.R. § 300.534 (West 2001). T.S. attempts

---

[2]Apparently, the school district concedes that neither T.S. nor his parents received the required formal written notice of eligibility for graduation. Yet, even if T.S. argued that this defect rendered his graduation invalid, he could not succeed. For this is, at best, a technical procedural defect, and does not constitute a failure to provide T.S. with a FAPE. *See Erickson v. Albuquerque Pub. Sch.*, 199 F.3d 1116, 1120 n.4 (10th Cir. 1999). If there has been no substantive deprivation, procedural defects do not amount to a denial of FAPE. *See O'Toole v. Olathe Unified Dist. Sch. No. 233*, 144 F.3d 692, 707 (10th Cir. 1998).

8

to find support in the Oklahoma State Department of Education handbook, *Policies and Procedures for Special Education in Oklahoma*, but neither party indicates whether the provisions of this handbook are legally binding. Even assuming that the handbook creates an entitlement to an "exit meeting" under Oklahoma law (which would be quite a leap, and one not sustainable on the current record), we still fail to see any substantive deprivation resulting from the alleged procedural defect. Hence, there is no basis for compensatory relief, or for an impliedly invalid graduation. [3]

Third, T.S. argues that, in the absence of an exit IEP meeting and adequate notice of an impending change in placement, the school district should have convened a due process hearing to address any deficiencies. This conclusion is justified, T.S. argues, because the IDEA requires local educational agencies to provide an opportunity for students and parents to "present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child . . . ." 20 U.S.C. § 1415(b)(6). This "opportunity" must take the form of a due process hearing. 20 U.S.C. § 1415(f)(1). Again, T.S. has alleged no substantive deprivations related to the alleged procedural defect. He

---

[3]We need not decide whether Oklahoma's purported "exit meeting" requirements create an entitlement of which T.S. was deprived. We note, however, that the facts before us seem to present a picture of a school district earnestly (and successfully) attempting to comply with the IDEA.

9

apparently views a due process hearing as a sort of discovery device to identify possible substantive deprivations that he has no obligation to point to in advance. In the present circumstances, we think this is an unrealistic approach without some accompanying challenge to graduation for graduation deprived him of his right to a due process hearing. And T.S. has not argued that he was not qualified to graduate or that procedural defects denied him a FAPE, and that he therefore is entitled to compensatory relief. [4] We conclude that T.S. has waived any such substantive claim.

Even if we were to assume that T.S. was challenging his graduation certainly a questionable assumption), T.S. has waived any argument that the school district denied him a FAPE because he has not made such a contention on appeal. It is well-settled that, without a claim that the FAPE was deficient, procedural defects are not actionable. *See Erickson*, 199 F.3d at 1123 ("[A] school district's failure to comply with statutory IEP content requirements did not amount to a substantive deprivation, so there was no violation of the student's

---

[4]In his reply brief, T.S. does state that "[u]nder Oklahoma special education regulations, T.S. cannot lawfully graduate without an exit IEP meeting." Appellant's Reply Br. at 2 (citing Policies and Procedures for Special Education in Oklahoma at 80). But we need not consider arguments raised for the first time in a reply brief. *Codner v. United States*, 17 F.3d 1331, 1332 n.2 (10th Cir. 1994). Such arguments are considered waived. *Id*. And, in any event, we doubt that T.S. is seriously challenging his graduation here—every other aspect of his briefs and his statements at oral argument indicate that he is only seeking an exit IEP meeting, and nothing more.

right to a FAPE.") (citing *Urban v. Jefferson Cy. Sch. Dist. R-1*, 89 F.3d 720, 727 (10th Cir. 1996)); *O'Toole*, 144 F.3d at 707; *see also Doe v. Defendant I*, 898 F.2d 1186, 1190-91 (6th Cir. 1990) (declining to "exalt form over substance" by holding that technical deviations from procedural requirements render an IEP invalid). Procedural defects alone do not constitute a violation of the right to a FAPE unless they result in the loss of an educational opportunity.

T.S.'s only explanation for his lack of a substantive claim is that he is not in a position to assert denial of a FAPE because he cannot know this without the aid of a due process hearing or an exit evaluation. But he does not argue that the alleged procedural mistake was itself a deprivation of a FAPE. Thus, he necessarily does not argue that the deprivation caused his graduation to be improper. Even if we were to stretch the language of T.S.'s brief, we still could not glean from it a claim of substantive deprivation. The closest thing to a substantive claim appears in T.S.'s memorandum to the district court. There, he wrote: "Higher education institutions beyond high school are not required to provide accommodations that are not documents [sic] in the student's IEP." This may imply that—regardless whether T.S. properly graduated—he is still entitled to some service from the school district in his post-secondary life. Conceivably, such a request could amount to a demand for prospective relief that was within this court's jurisdiction. However, we are aware of no legal support for T.S.'s

contention. Post-secondary institutions that receive federal funding are required to allow students with disabilities to receive the benefits of post-secondary education. *See* 34 C.F.R. § 104.43 (West 2001). But there is no requirement of documentation by way of the student's IEP in high school to establish the student's eligibility for post-secondary accommodation. We cannot devise a substantive claim from T.S.'s argument when he has failed to clearly articulate such a demand.

T.S. also makes a murky argument implying that he failed to obtain necessary "transition services," but does not identify what such services might be. In any event, any such services are a request for prospective relief. Thus, they are no longer the responsibility of the school district, whose obligations ceased upon T.S.'s graduation. *See Daugherty v. Hamilton Cty. Sch.*, 21 F.Supp.2d 765, 774 (E.D. Tenn. 1998) (plaintiff not entitled to post-secondary services where she did not contest the adequacy of her FAPE or her graduation); *Chuhran v. Walled Lake Consolidated Sch.*, 839 F.Supp. 465, 473-74 (E.D. Mich. 1993), *aff'd*, 51 F.3d 271, 1995 WL 138882 (6th Cir. 1995). T.S., if still requiring services, may seek accommodations from his post-secondary institution under the Rehabilitation Act, 29 U.S.C. § 504. *See also* 34 C.F.R. § 104.43 (West 2001).

Much has been made of the timing of T.S.'s final due process hearing request. Had T.S. contested his graduation, or shown entitlement to some post-

12

graduation services, the timing issue might have been sticky. The request for a due process hearing came on the day of T.S.'s graduation. The school district cites clearly established law that its obligations to T.S. ceased upon graduation. "The obligation to make FAPE available to all children with disabilities does not apply with respect to . . . [s]tudents with disabilities who have graduated from high school with a regular high school diploma . . . ." 34 C.F.R. § 300.122(a)(3)(i) (West 2001). Thus, if T.S. had properly graduated, the hearing officer would not have had jurisdiction over his claims and he would properly have dismissed T.S.'s case. The request for a due process hearing was arguably made after T.S. had completed his educational program, and thus was entitled to no further services. This was the assumption made by the district court: "At the time T.S. submitted his requests, he had completed all requirements necessary for his secondary education. He was therefore no longer entitled to the protections and benefits of the IDEA, and in particular, no longer entitled to a due process hearing." Order at 9. "The obligation to make FAPE available to all children with disabilities does not apply with respect to . . . [s]tudents with disabilities who have graduated from high school with a regular high school diploma." 34 C.F.R. § 300.122(a)(3)(i) (West 2000). The high school IDEA obligations cease once the student has completed the general graduation requirements. *See Chuhran*, 830 F.Supp. at 473-74. The Code of Federal Regulations simply states

13

that a student who has "graduat[ed] with a regular high school diploma" is no longer eligible to receive special educational benefits. 34 C.F.R. § 300.122(a)(3)(i). The district court found it "undisputed that T.S. has graduated from Stroud High School with a regular high school diploma, and that he did so prior to requesting the due process hearing that is the subject of the instant complaint." Order at 8-9.

In any event, the question of the specific point in time at which the due process hearing request became effective is immaterial. T.S. presumably mailed his request for a due process hearing prior to the last day of school (May 19) since it was received by the school district on May 20. He thus arguably submitted the request prior to graduation *and* possibly prior to meeting the requirements for graduation, thereby establishing the need for the procedural safeguards he desires. Were we required to address this issue, we perhaps would have to remand for a determination whether T.S. had in fact graduated before submitting his request. However, these factual determinations are unnecessary because nowhere in the district court or on this appeal has T.S. explicitly contested his graduation or made a viable claim of entitlement to post-graduation relief.

Whether we have jurisdiction of T.S.'s claims or not is a close question since his claims might be construed (if he contests the validity of his graduation) as seeking compensatory relief. They would then be denied on the merits for the

14

reasons we have set forth.  We believe, however, that the substantive basis for T.S.'s requests is so thin, and a possible challenge to his graduation so elusive, that we think the case is moot.

For the foregoing reasons, we VACATE the judgment of the district court.