**F I L E D**

PUBLISH

**April 16, 2007**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

POPE and KATHLEEN MOSELEY,
as parents and next friends of P.L.
MOSELEY, a minor and for similarly
situated students,

      Plaintiffs-Counter-Defendants -
      Appellants,

v.

BOARD OF EDUCATION OF
ALBUQUERQUE PUBLIC
SCHOOLS,

      Defendant-Counter-Claimant -
      Appellee,

and

PUBLIC EDUCATION
DEPARTMENT OF THE STATE OF
NEW MEXICO,

      Defendant-Counter-Claimant.

No. 06-2157

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-04-103)**

---

Gail Stewart, (Steven Granberg, P.A., and Tara Ford, Pegasus Legal Services for
Children, on the brief), Albuquerque, New Mexico, for Plaintiffs-Counter-
Defendants - Appellants.

Michael L. Carrico, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, New Mexico, for Defendant-Counter-Claimant - Appellee.

---

Before **KELLY**, **McCONNELL**, and **HOLMES**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Plaintiff-Appellant P.L. Moseley appeals from the district court's grant of judgment in favor of the Albuquerque Public Schools (APS) on his claim under the Individuals with Disabilities Education Act (IDEA) and its grant of summary judgment in favor of APS on his claims under § 504 of the Rehabilitation Act of 1973 (§ 504) and Title II of the Americans with Disabilities Act (Title II). Our jurisdiction arises under 28 U.S.C. § 1291, and we dismiss Mr. Moseley's appeal because all of his claims are now moot.

### Background

In 2003, when Mr. Moseley was a student at Del Norte High School in Albuquerque, his parents filed an IDEA due process request against APS on his behalf. The request also alleged disability discrimination under § 504. The request was based in part on the failure of APS to provide Mr. Moseley with assistive technology, specifically real-time captioning.

Mr. Moseley is deaf, has visual tracking problems, and suffers from attention deficit disorder. After the IDEA due process hearing, the Due Process

Hearing Officer (DPHO) found in pertinent part that APS had denied Mr. Moseley a free appropriate public education (FAPE) because it failed to fully evaluate whether real-time captioning was appropriate for Mr. Moseley. The DPHO, however, found no evidence of discrimination in violation of § 504.[1] An Administrative Appeals Officer (AAO) reversed the DPHO's finding that Mr. Moseley required real-time captioning to receive a FAPE, but affirmed the rejection of the § 504 claim.

The IDEA guarantees that children with disabilities have access to "a free and appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d). To meet this goal, the IDEA provides federal funding to state and local agencies and requires them to provide each child with an Individual Education Plan (IEP). See T.S. v. Indep. Sch. Dist. No. 54, 265 F.3d 1090, 1091 (10th Cir. 2001), cert. denied, 535 U.S. 927 (2002). "An IEP is a written statement that includes such matters as the child's level of educational performance, annual goals, services to be provided to the child and the like." Id. (citing 20 U.S.C. § 1414(d)). A school district satisfies its obligation to provide a FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." Bd. of Educ. v. Rowley, 458 U.S. 176, 203 (1982). The IDEA

___

[1] The jurisdiction of the DPHO to consider § 504 claims concurrently with IDEA claims has since been eliminated. See N.M. Admin. Code § 6.31.2.13(H)(1) & (I)(1).

- 3 -

requires that a plaintiff exhaust two tiers of administrative review prior to filing suit in state or federal court. See 20 U.S.C. § 1415 (f)-(g), (i)(2).

Section 504 and Title II are anti-discrimination statutes. Plaintiffs asserting violations of the IDEA often assert claims under § 504 and Title II as well. Section 504 provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794(a). Title II provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

While attending Del Norte, Mr. Moseley received special education services because of his disability. Most deaf students at Del Norte were placed in segregated classes, but one third, including Mr. Moseley, were placed in general education classes for the entirety of the school day. As part of his IEP, Mr. Moseley received, among other services, supports, modifications, and accommodations: access to written class notes, reduced assignments and homework, extra time for oral and written responses, testing accommodations, and the use of an interpreter.

- 4 -

Before Mr. Moseley began high school, his family had requested that APS consider providing some form of real-time captioning so that Mr. Moseley could access class lectures and discussions without the use of an interpreter. During Mr. Moseley's sophomore year, APS provided real-time captioning to him for a nine-week trial period in the English 10 class. The specific form of real-time captioning provided to Mr. Moseley was called Communication Access Real Time Captioning (CART).[2]

To summarize the record, Mr. Moseley scored slightly better when working with an interpreter than he did when using CART. Consequently, the APS IEP Team concluded that CART was not required for Mr. Moseley because his performance under CART did not significantly differ from his performance when working with an interpreter and there was no evidence that the use of interpreters was inappropriate. APS's decision to discontinue CART prompted Mr. Moseley to file the IDEA due process request which demanded provision of CART for his 11th grade chemistry class, provision of captioned videos and films, further teacher training and certification, provision of adequate transition services (to college), provision of IEP modifications and accommodations, and provision of an advanced sign language class.

---

[2] CART requires an operator, similar to a court reporter, who keys dialogue into a machine which then generates text that can be read. In this case, the use of CART in English 10 produced approximately 50 pages of hard transcript per day.

The IDEA due process hearing was held on September 16-19 and October 3 of Mr. Moseley's 11th grade year (2003-2004).[3] The DPHO concluded that Mr. Moseley did require CART for a full semester, with an evaluation of the services to follow, in order for him to have a FAPE as required by the IDEA. APS appealed this decision to the second-tier of IDEA review, the AAO. The AAO concluded that CART was not necessary for Mr. Moseley to receive a FAPE. The AAO did, however, find deficiencies in Mr. Moseley's IEP modifications and accommodations and ordered several other remedies. It found for APS on all other matters.

Mr. Moseley's parents then brought suit on his behalf in the district court against APS and the New Mexico Public Education Department (NMPED). They asserted claims on behalf of Mr. Moseley and also sought class certification on behalf of all deaf students attending APS schools from 2002-2004 who were entitled to special education services. The complaint alleged, inter alia, that APS violated the IDEA, § 504, and Title II by failing to provide deaf students with a number of technologies and services, including real-time captioning and college transition services.

NMPED moved to dismiss the class action claims, and that motion was

_____

[3] "When parents believe their child is not being provided a FAPE in the least restrictive environment, they are entitled to an impartial due process hearing . . . ." Ellenberg v. N.M. Military Inst., – F.3d –, 2007 WL 678438, at *3 (10th Cir. March 7, 2007).

granted. Aplt. App. at 77-80, 83-84. The district court concluded that class

certification was inappropriate because only Mr. Moseley had exhausted his

claims, and it would not be futile for the prospective class members to pursue

administrative remedies.[4] The district court then amended its order to reinstate

the class action claims against APS, as only the NMPED had moved to dismiss

those claims. Doc. 60 at 5-6 (Memo. Op. & Order dated 11/12/2004). The

district court later considered APS's motion for judgment on Mr. Moseley's

individual IDEA claim and its motion for summary judgment on Mr. Moseley's §

504 and Title II claims. Applying the standard for a FAPE set out in Rowley, 458

U.S. at 188-89, the district court found that the services provided to Mr. Moseley

were sufficient under the IDEA. Relying on Urban v. Jefferson County School

District, 89 F.3d 720, 727-28 (10th Cir. 1996), the district court then granted

summary judgment for the § 504 and Title II claims because it determined that

denial of the IDEA claim precluded the § 504 and Title II claims as all three

claims shared the same substantive standard and the same set of facts gave rise to

each.[5]

---

[4] Judicial review of an IDEA claim is generally permitted only after a claimant exhausts state administrative remedies. See 20 U.S.C. § 1415(i)(2).

[5] We recognize that the district court's disposition of the § 504 and Title II claims is arguably in conflict with our holding in Ellenberg that it was error for the district court to dismiss a plaintiff's § 504 and Title II claims because the plaintiff failed to properly exhaust his IDEA administrative remedies. 2007 WL 678438, at *11-12. In Ellenberg, the plaintiff alleged facts sufficient to prove a "pure discrimination claim[]." Id. at *12. In this case, Mr. Moseley seems to

On appeal, Mr. Moseley argues that the district court erred in its review: (1) by failing to consider additional evidence, imposing a requirement for subsequent exhaustion on CART, and deferring to the AAO on factual issues dependent on credibility, (2) by improperly dismissing Mr. Moseley's § 504 and Title II claims by conflating their substantive standards with that of the IDEA, and (3) by concluding, on the merits, that Mr. Moseley received a FAPE and was not discriminated against under § 504 and Title II.

## **Discussion**

Before this appeal was filed, Mr. Moseley graduated from high school. We ordered supplemental briefing to determine whether this fact rendered Mr. Moseley's claims moot. In the complaint, Mr. Moseley asked that the district court reverse the decision of the AAO and declare APS to be in violation of the IDEA, § 504, and Title II. He also asked that the district court enjoin APS from further discrimination against him because of his deafness, that it award him attorney's fees and costs, and that it grant any other appropriate relief. While the complaint requested an award of compensatory damages for class members, Mr. Moseley never requested compensatory damages as an individual, nor did he seek

---

base his § 504 and Title II claims on entirely the same facts as his IDEA claim. Nevertheless, because Mr. Moseley's claims are moot, we need not decide the import of Ellenberg in this case.

to amend the complaint.

Mr. Moseley did not contest his graduation,[6] so his request to reverse the decision of the AAO and to declare APS to be in violation of the IDEA, § 504, and Title II will have no effect on the present or future actions of either party. See T.S., 265 F.3d at 1092 ("Once a student has graduated, he is no longer entitled to a FAPE; thus any claim that a FAPE was deficient becomes moot upon a valid graduation."); Bd. of Educ. v. Nathan R., 199 F.3d 377, 381 (7th Cir. 2000) (same). Mr. Moseley's graduation also moots his request for an injunction against APS, as plaintiffs "seeking prospective relief must show more than past harm or speculative future harm." Lippoldt v. Cole, 468 F.3d 1204, 1217 (10th Cir. 2006). Likewise, Mr. Moseley's general request for other appropriate relief is moot. While Mr. Moseley's counsel tried mightily at oral argument to

---

[6] "The IDEA requires that school districts educate disabled students to twenty-one years of age, unless doing so is inconsistent with state law." Birmingham v. Omaha Sch. Dist., 220 F.3d 850, 853 (8th Cir. 2000) (citing 20 U.S.C. § 1412(a)). Nevertheless, a disabled student may graduate earlier than the age of twenty-one if certain procedural safeguards are followed. See id. When a school district intends to graduate a student before the student has reached the age of twenty-one, it must give prior written notice to the student's parents regarding this pending change in "educational placement." 20 U.S.C. § 1415(b)(3); 34 C.F.R. § 300.102(a)(3)(iii). The student's parents may then file a "complaint" with the school, contesting the graduation. See id. § 1415(b)(6)(A). The filing of such a complaint entitles the parents to an "impartial due process hearing" at the administrative level, where they may present arguments as to why continued education is necessary for the student to receive a FAPE. See id. § 1415(f)(1)(A). Following exhaustion of an administrative appeal, see id. § 1415(g)(1), the parents may then challenge the proposed graduation by bringing an action in federal district court, see id. § 1415(i)(2).

convince us that there was some effective equitable remedy that could be fashioned, counsel could not articulate what form such a remedy might take. We struggle to see what equitable remedy this court could impose, given that Mr. Moseley has already graduated from high school and cannot return to Del Norte.

Based on the facts, the only effective relief Mr. Moseley could claim comes in the form of compensatory damages. While most circuits hold that the IDEA does not permit compensatory damages,[7] see Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 28 (1st Cir. 2006); Gean v. Hattaway, 330 F.3d 758, 774 (6th Cir. 2003); Sellers v. Sch. Bd., 141 F.3d 524, 526-27 (4th Cir. 1998); Charlie F. v. Bd. of Educ., 98 F.3d 989, 991 (7th Cir. 1996); Heidemann v. Rother, 84 F.3d 1021, 1033 (8th Cir. 1996), a plaintiff may recover compensatory damages under § 504 and Title II in certain circumstances, see Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10th Cir. 1999) (holding that compensatory damages are available under § 504 upon a showing of intentional discrimination); Davoll v. Webb, 194 F.3d 1116, 1141 (10th Cir. 1999) (suggesting, but not explicitly holding, that proof of intentional discrimination is required for compensatory damages under Title II). Thus, Mr. Moseley's § 504 and Title II claims would be

_____

[7] This court has yet to decide whether the IDEA permits compensatory damages. See Cudjoe v. Indep. Sch. Dist. No. 12, 297 F.3d 1058, 1067 n.10 (10th Cir. 2002). While we see no reason to depart from the majority view, such a determination is not necessary in this case because Mr. Moseley never sought compensatory damages as an individual.

justiciable if he had sought compensatory damages.  See Taxpayers for Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist., 739 F.2d 1472, 1479 (10th Cir. 1984) ("[B]y definition claims for past damages cannot be moot.").

Nevertheless, Mr. Moseley never prayed for compensatory damages.  The complaint did seek compensatory damages for class members, but not for Mr. Moseley individually.  Regardless, the class action claims against the NMPED were dismissed on motion, and the final order in this case effectively dismissed the class action claims against APS by granting judgment in favor of defendants on all remaining claims contained in the complaint.  Aplt. App. at 306.  No appeal was taken from the class action rulings and no evidence suggesting compensatory damages ever surfaced in the district court.

The IDEA does entitle plaintiffs to claim monetary awards in the form of reimbursement for services that a school wrongfully failed to provide, see Sch. Comm. v. Dep't of Educ., 471 U.S. 359, 370-71 (1985), and may also provide plaintiffs with the remedy of compensatory education services when they have been denied a FAPE, see Urban, 89 F.3d at 727 (noting that this circuit has yet to decide whether compensatory education services are available under the IDEA to remedy denial of a FAPE).  Nevertheless, as noted above, Mr. Moseley failed to request either reimbursement or compensatory education services in his complaint.  The tenor of the entire complaint and proceedings in this action is for

injunctive relief.

Finally, because the underlying substantive claims are moot, Mr. Moseley cannot recover attorney's fees and costs. See Nathan R., 199 F.3d at 381. In short, Mr. Moseley seeks no effective form of relief. Mr. Moseley argues that the IDEA itself says nothing about a student's claims terminating upon graduation. This may be true, but if Mr. Moseley's claims present no live controversy, they are not justiciable under the Constitution. See Lippoldt, 468 F.3d at 1216; see also Matos ex rel. Matos v. Clinton Sch. Dist., 367 F.3d 68, 72 (1st Cir. 2004). While Mr. Moseley insists that his claims present a live controversy because the IDEA allows for reimbursement and compensatory education services, Mr. Moseley never requested such relief, nor can he articulate any equitable relief that would present a live controversy. We are obliged, under our independent duty to examine our own jurisdiction, see Airport Neighbors Alliance, Inc. v. United States, 90 F.3d 426, 428 (10th Cir. 1996), to dismiss his appeal as moot.