FILED
United States Court of Appeals
Tenth Circuit

April 26, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

MARK JORDAN,

> Plaintiff-Appellant,

v.

R. WILEY, Warden, ADX Florence;
H. LAPPIN, Director, Bureau of
Prisons; U.S. BUREAU OF PRISONS,

> Defendants-Appellees.

No. 10-1549
(D.C. No. 1:07-CV-00498-MSK-KLM)
(D. Colo.)

---

ORDER AND JUDGMENT[*]

---

Before **KELLY**, **MURPHY**, and **HOLMES**, Circuit Judges.

---

Mark Jordan, a federal prisoner proceeding pro se, brought this civil rights

suit charging that the defendants had violated his constitutional rights by

sanctioning him for possession of his presentence investigation reports (PSRs).

His complaint included seven claims, all of which the district court eventually

dismissed. He now appeals from the district court's grant of summary judgment

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

on three of these claims.  We dismiss the appeal in part as moot, and affirm in part.

## BACKGROUND

On June 3, 1999, while incarcerated at the United States Penitentiary in Florence, Colorado for armed bank robbery, Mr. Jordan stabbed another inmate to death.  *See United States v. Jordan*, 485 F.3d 1214, 1216-18 (10th Cir. 2007).  He was later moved to a Bureau of Prisons (BOP) facility in Englewood, Colorado, where he awaited sentencing on charges associated with the murder.  In August 2005, a probation officer in charge of preparing his PSR for the murder interviewed him there.

The probation officer allegedly informed Mr. Jordan that the information from a previous PSR relating to his 1994 bank robbery conviction would be incorporated into the 2005 PSR.  Mr. Jordan was unhappy about this because he believed some of the information in the 1994 PSR was inaccurate.  To help him prepare for sentencing on the murder charge, he obtained copies of both his 1994 PSR and the draft 2005 PSR.

On October 20, 2005, Mr. Jordan was transferred to the United States Penitentiary--Administrative Maximum (ADX), a BOP facility in Florence, Colorado.  Upon his arrival, his personal property, including the PSRs, was inventoried.  Although a BOP Program Statement in effect since September 2002

prohibited inmates from possessing copies of their PSRs, Mr. Jordan's copies of his PSRs were not seized during this inventory.

A week later, however, staff at Florence conducted a shakedown of Mr. Jordan's cell. During the shakedown they seized the PSRs. As a result of his possession of the PSRs, Mr. Jordan was charged with a disciplinary violation for possession of contraband under Prohibited Act Code 305 ("Code 305").[1] Code 305 prohibits "[p]ossession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels." 28 C.F.R. § 541.3, Table 1, Prohibited Act Code 305.

Mr. Jordan's conduct was also putatively prohibited by BOP's Program Statement 1351.05. The BOP issued Program Statement 1351.05 in 2002 to implement BOP policies and procedures under the Freedom of Information Act. Section (12)(a)(2)(d)(1) of this Program Statement prohibits inmates from possessing copies of their PSRs. *See* Program Statement 1351.05(12)(a)(2)(d)(1), reproduced at R. at 651. The BOP enacted this restriction in part in order to prevent inmates' personal information from being used against them by other inmates.

The Program Statement contains an exception for inmates in BOP custody "with a need to review their PSRs prior to sentencing." *Id.* After sentencing,

---

[1] Mr. Jordan was charged with possession of two copies of his 1994 PSR. *See* R. at 740 (deposition of Mark Jordan).

however, such an inmate is prohibited from retaining a copy of his PSR. *Id.* Inmates are also permitted to review their own PSRs upon request without retaining a copy.

Prison authorities held a disciplinary hearing on the possession-of-contraband charge against Mr. Jordan. He asserts that during this hearing he was not permitted to call witnesses or to present evidence. He was convicted of the contraband charge and was sentenced to a thirty day suspension of his commissary privileges.

In December 2005, Defendant R. Wiley, Warden at ADX, recommended that Mr. Jordan be placed in the facility's high-security Control Unit. He based his recommendation, in part, on Mr. Jordan's disciplinary record, which included the disciplinary conviction for possession of the PSRs.

In January 2006, Mr. Jordan was afforded a Control Unit Hearing. *See* 28 C.F.R. § 541.43. Although he was permitted to present evidence and to call witnesses at the hearing, he was not permitted to challenge his prior conviction for possession of contraband. Based in part on his disciplinary record, but primarily on his 1999 murder of another inmate, Mr. Jordan was assigned to the Control Unit for a period of 65 months.

After pursuing his administrative remedies, Mr. Jordan brought this suit in the District of Colorado, seeking injunctive and declaratory relief. His complaint included seven claims: (1) that Code 305 was impermissibly vague as applied to

punish him for possessing his 1994 PSRs pending sentencing, in violation of the Fifth Amendment; (2) that Program Statement 1351.05 was impermissibly vague as applied to punish him for possessing his 1994 PSRs pending sentencing, in violation of the Fifth Amendment; (3) that he was disciplined and placed in the Control Unit without procedural due process; (4) that his discipline and placement in the Control Unit was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; (5) that his discipline violated various statutory rights, including provisions of the Administrative Procedures Act ("APA"); (6) that Program Statement 1351.05 was promulgated and implemented without observance of the APA's notice and comment procedures; and (7) that the BOP designated PSRs as contraband without proper notice and comment procedures and without publication in the Federal Register.

Mr. Jordan consented to the dismissal of his seventh claim. The district court then granted summary judgment to the defendants on claims (1)-(3). Mr. Jordan subsequently consented to dismissal without prejudice of claims (4)-(6). He then attempted to appeal from the summary judgment on his first three claims. Because the district court had only entered a dismissal *without prejudice* of claims (4)-(6), however, we remanded for the limited purpose of entering a *with prejudice* dismissal that would provide us with jurisdiction over the appeal. On February 27, 2012, the district court entered an order of dismissal

with prejudice, ripening Mr. Jordan's notice of appeal. *See Lewis v. B.F. Goodrich Co.*, 850 F.2d 641, 645 (10th Cir. 1988) (en banc).

## ANALYSIS

Before proceeding to the merits of Mr. Jordan's claims, "[w]e are obliged under our independent duty to examine our own jurisdiction" to determine whether any of the relief he seeks has become moot. *Moseley ex rel. Moseley v. Bd. of Educ.*, 483 F.3d 689, 694 (10th Cir. 2007); *see also Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) ("Mootness decisions are concerned in large part with the determination whether any effective purpose can still be served by a *specific remedy*." (internal quotation marks omitted)). We hold that no effective purpose can be served by much of the relief sought in Mr. Jordan's complaint. Much of this appeal has therefore become moot.

We begin with Mr. Jordan's request for injunctive relief. He sought a permanent injunction ordering the defendants to release him from ADX confinement. He has already been released from ADX confinement, however, and transferred to a different facility. He does not request damages for his prior confinement to ADX. This request for relief is therefore moot. *Cf. McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (stating release from prison generally moots claims for injunctive relief).

Mr. Jordan sought a permanent injunction prospectively enjoining the enforcement of Code 305 and Program Statement 1351.05. He has, however,

-6-

dismissed with prejudice or abandoned his claims that *facially* attacked these regulations. *See* R. at 28-29 (detailing dismissed claims (5), (6), and (7)). His remaining claims involving these regulations target only their vagueness *as applied* to punish him *in the past*. *See id.* at 28 (alleging, in claims (1) and (2) that Code 305 and Program Statement 1351.05 were "impermissibly vague as applied to punish Jordan for possessing his [PSRs] pending sentencing").

The prospective injunctive relief Mr. Jordan seeks barring application of these regulations to him in the future would provide no remedy for the harm he claims to have suffered from their past application. Moreover, he has not established any danger that the regulations may again be applied to him in a wrongful manner as they allegedly were previously. He does not assert, for example, that he has a pending sentencing proceeding that he needs to prepare for by once again possessing his PSRs. Any such future need or harm is therefore purely speculative.[2] The prospective injunctive relief he seeks could have "no effect in the real world," *Jordan*, 654 F.3d at 1030 (internal quotation marks omitted), and is therefore moot.

---

[2]     Any suggestion that Mr. Jordan will have a sentencing-related need to possess his PSR or that he would be punished for wrongful possession of a PSR in the future is too speculative to bring him within any exception (including the "capable of repetition yet evading review" exception) to traditional mootness doctrine. *See Moongate Water Co. v. Dona Ana Mut. Domestic Water Consumers Ass'n*, 420 F.3d 1082, 1090 (10th Cir. 2005) (enumerating exceptions to mootness doctrine and noting that none applied where alleged harm would be remote and speculative).

Mr. Jordan's remaining claim for injunctive relief requests that defendants be ordered "to expunge and purge from all BOP records and files all documents and references relating to the disciplinary action against Jordan for possessing his PSRs." R. at 32. While this claim is not moot, it fails for another reason. In *Sandin v. Conner*, 515 U.S. 472, 486-87 (1995), the Court held that where a disciplinary action does not "work a major disruption in [a prisoner's] environment" or "inevitably affect the duration of his sentence," the prisoner has not suffered an atypical, significant hardship triggering due process protections. Mr. Jordan has failed to show that having a disciplinary report in his record, even if that report may have been obtained in violation of procedural due process or due to an impermissibly vague application of prison regulations, would subject him to an atypical and significant hardship.

Mr. Jordan has presumably already completed his thirty days of commissary restriction, which in any event did not represent an atypical and significant hardship. *See, e.g., Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (holding that 30-day commissary and cell restrictions did not implicate due process concerns). Even if the extended placement in the Control Unit could be viewed as an atypical and significant hardship, any concern on Mr. Jordan's part that his disciplinary conviction could result in another stint in ADX or its Control Unit at this point would be purely speculative.

We also note that although it is true that Warden Wiley initially relied in part on the possession-of-contraband conviction in reaching his decision to assign Mr. Jordan to the Control Unit, on further consideration of Mr. Jordan's continued detention the warden excluded that conviction from consideration. The warden nevertheless reaffirmed the Control Unit sentence because:

> The murder you committed was exceptionally brutal. You attacked the defenseless and unarmed victim, and thrust an 11-inch, homemade knife into his right flank. The deep stab wound caused massive internal and external bleeding and resulted in the death of the victim. You then attempted to conceal your crime by throwing the murder weapon on the roof of a housing unit. It should be noted, you perpetrated the murder on the main recreation yard which was crowded with inmates. Your violent assault could easily have touched off a major disturbance. Given the heinous and cold-blooded nature of your murder of a fellow inmate and human being, I can find no justification for a reduction in Control Unit status.

R. at 730.

Thus, the possession-of-contraband conviction of which Mr. Jordan complains played only a small, arguably insignificant, role in his assignment to and continued placement in Control Unit status. It would be entirely speculative to assume that this same contraband conviction could somehow in the future lead to some atypical and significant hardship. This being the case, Mr. Jordan is not entitled under federal law to an injunction ordering the expungement of his disciplinary conviction.

-9-

We turn next to the claims for declaratory relief. Although "[t]he mootness of a plaintiff's claim for *injunctive relief* is not necessarily dispositive regarding the mootness of his claim for a *declaratory judgment*," *Jordan*, 654 F.3d at 1025, in this particular case Mr. Jordan's remaining requests for declaratory relief suffer from similar deficiencies as his claims for injunctive relief.

Mr. Jordan seeks, first, a declaration that Code 305 and Program Statement 1351.05 are "impermissibly vague as applied to Jordan's possession of his [PSRs] pending sentencing." R. at 31. It is well settled that what makes a declaratory judgment action a proper judicial resolution of a case or controversy is the resolution of a dispute that affects the defendant's behavior toward the plaintiff. *Jordan*, 654 F.3d at 1025. The legal interest that will support a declaratory judgment "must be more than simply the satisfaction of a declaration that a person was wronged." *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) (internal quotation marks omitted).

Any dispute involving the defendants' past application of Code 305 and Program Statement 1351.05 to Mr. Jordan does not represent a live case or controversy between the parties that can be settled by issuance of a declaratory judgment. Mr. Jordan has demonstrated no ongoing harm representing an atypical and significant deprivation that might result from either his disciplinary conviction or his now-terminated Control Unit placement. Nor has he shown that he requires a declaratory judgment to forestall a prospective attempt to apply

-10-

Code 305 or Program Statement 1351.05 to him in an impermissibly vague manner. In sum, there is no sufficiently real and immediate controversy involving the application of the regulations to justify the issuance of a declaratory judgment.

For similar reasons, Mr. Jordan's request for a declaratory judgment that the BOP improperly disciplined him and placed him in the Control Unit without due process must also fail. His due process claim involves (1) his alleged inability to call witnesses at either his disciplinary proceeding or his Control Unit hearing who would have testified to the wrongfulness of the contraband charge based on his possession of PSRs, and (2) the alleged wrongfulness of the contraband charge itself, as ultimately used to confine him to the Control Unit. As we have already established, however, Mr. Jordan fails to show that declaratory relief concerning these issues could have any cognizable real-world effect. Mr. Jordan has presumably served his punishment for his disciplinary offense, has been released from ADX and its Control Unit and transferred to a different facility, is not constitutionally entitled to expungement of his conviction, and fails to show that he faces any ongoing atypical and significant hardship that might result from the alleged denial of due process concerning the contraband charge or the Control Unit placement.

**CONCLUSION**

With the exception of Mr. Jordan's request for expungement of his disciplinary conviction, his claims are moot. We therefore DISMISS the appeal involving these claims for lack of jurisdiction. We AFFIRM the district court's grant of summary judgment on the expungement claim, which fails to state a claim under federal law.

Mr. Jordan's motion to proceed *in forma pauperis* is GRANTED. His "Motion for Modification of Prior IFP Order" and "Motion for Judicial Notice" are DENIED.

Entered for the Court


Jerome A. Holmes
Circuit Judge